540 So.2d 525 (1989)
Joseph R. MOORE
v.
MASON & DIXON TANK LINES[1].
No. 88 CA 1188.
Court of Appeal of Louisiana, First Circuit.
February 28, 1989.
*527 Arthur Cobb, Baton Rouge, for plaintiff-appellee Joseph R. Moore.
Geoffrey P. Snodgrass, New Orleans, for defendant-appellant The Mason Dixon Tank Lines, Inc.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
The captioned proceeding was brought by Joseph R. Moore (plaintiff) against his employer, Mason & Dixon Tank Lines (defendant), alleging that he was totally and permanently disabled within the meaning of LSA-R.S. 23:1221 and eligible for benefits thereunder, which defendant has refused to pay.
The trial court determined that plaintiff was entitled to benefits under LSA-R.S. 23:1221(3) ("Supplemental earnings benefits"), the purpose of which is to make up the difference between the amount that an employee was earning prior to his disability and the amount that he is able to earn afterward. Significantly, an award under the statute is based upon the employee's ability to earn rather than what he is actually earning. The trial court, however, applied the following standard:
After hearing the testimony of plaintiff, the Court finds that the plaintiff, at this time, is unable to find employment in an area for which he is particularly fitted by reason of education, experience and training as a consequence of the pain the plaintiff experiences as testified to at trial.
(Emphasis ours.) The standard applicable to the facts at bar,[2] found at LSA-R.S. 23:1221(3) reads, in pertinent part:
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent (sic) or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).

. . . . .
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able *528 to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
(ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee can not perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
Defendant has appealed, asserting that the trial court applied an improper legal standard. Plaintiff has answered the appeal asserting error in the trial court's computation of benefits due and denial of penalties and attorney fees.
To recover benefits under the Louisiana Worker's Compensation Law, an employee must show that he has been injured as a result of an accident that has arisen out of and in the course of his employment. DeGruy v. Pala, Inc., 525 So.2d 1124 (La. App. 1st Cir.), writ denied, 530 So.2d 568 (La.1988). Where the employee shows the occurrence of an accident and of subsequent disability without any intervening cause, causation is presumed unless rebutted by the defendant. 525 So.2d at 1132.
To recover supplemental benefits under LSA-R.S. 23:1221(3), the employee must prove that the injury has resulted in his inability to earn at least 90% of his previous wages, irrespective of his previous occupation or an occupation for which the employee was particularly suited. See Green v. Cement Products Services, 526 So.2d 493, 497 (La.App. 1st Cir.1988). The amount of supplemental benefits is to be a percentage of the difference between 90% of the average of what the employee was earning at the time of his injury and the average of what the employee is able to earn after the injury. LSA-R.S. 23:1221(3)(a).[3]
Plaintiff was earning post-injury wages through self-employment. The trial court determined his average weekly earnings to be $225.00. This amount is significantly lower than what plaintiff was earning while in defendant's employ. The burden, therefore, under the statute, was upon defendant to show that employment at an average weekly wage in excess of what plaintiff was earning from his self-employment was tendered or offered by defendant or another employer, or that such employment was available in the community or in a reasonable geographic region. LSA-R.S. 23:1221(3)(c)(i).
In attempting to prove that employment was available, defendant's witness Douglas Kuylen, a vocational rehabilitation expert, testified that he read plaintiff's deposition and medical evidence, and performed certain evaluative tests on plaintiff. In his opinion, there were jobs available to plaintiff within the community. Kuylen's assessment was based in large part upon the deposition of Dr. Patricio H. Mujica who testified that the only physical restrictions he would assign to plaintiff would be a maximum lifting capacity of 50 pounds. Mujica testified, though, that he was unfamiliar with the overall requirements of plaintiff's particular job with defendant, which included ten-hour shifts driving cross-country, operating the heavy clutch and shifting through ten speeds, and lifting and connecting a 35-pound hose during unloading operations. Plaintiff testified that he could not sit in the cab of a tractor-trailer for ten-hour periods without experiencing pain and that operating the clutch and gears caused pain as well.
Mujica, who assessed plaintiff's total disability of the body as a whole at 20%, testified that it would not be unusual for a patient like plaintiff, who had undergone two surgeries to the lumbar region of his spine, including a fusion, to experience pain after sitting for long periods of time. Mujica also testified that it would not be unusual *529 for such a patient to experience pain when operating the clutch and gears.
Kuylen testified that given plaintiff's education and experience, truck driving would be the most lucrative field available. He then testified as to the average yearly openings and new jobs in the field. Plaintiff testified, however, that his ability to obtain employment from the major trucking firms in the area was severely hampered by his physical history. Plaintiff testified that several companies he contacted in regard to employment after his dismissal from Mason & Dixon[4] refused to allow him to submit an application because of his back problems.
In a suit for benefits under the Louisiana Worker's Compensation Law, the trier of fact should accept the uncontradicted testimony of a witness, even if the witness is a party, unless there are circumstances which otherwise cast doubt on its reliability. DeGruy, 525 So.2d at 1131. Additionally, disability under the act is a legal rather than purely medical determination, and both medical and lay testimony must be considered in reaching a decision. 525 So.2d at 1133. A trier of fact may, in fact, reject the opinion of a medical expert depending upon the impression that the expert's qualifications, credibility, and testimony make. Green, 526 So.2d at 498.
The trial court's written reasons for judgment indicate that it found plaintiff's testimony regarding the pain he experiences when driving for long periods of time and when operating the gears of a large truck credible and that he considered Mujica's testimony to the effect that plaintiff was able to return to his previous work in light of plaintiff's testimony and of Mujica's admission that he was unfamiliar with the particular rigors of cross-country truck driving. The reasons for judgment also indicate that the trial court did not believe the expert testimony regarding the availability to plaintiff of jobs in the community. These factual determinations are not clearly wrong based upon our examination of the record.
The portion of the reasons for judgment that we quoted initially indicates that the trial court applied the incorrect legal standard to the facts that it found. We are convinced, however, that the proper legal standard applied to these facts will have the same result.
We are unpersuaded by the expert testimony as to the availability of jobs primarily because that opinion was based upon an interpretation of Mujica's deposition testimony to be that plaintiff's only restriction would be lifting capacity, without apparent consideration of the doctor's own admission of unfamiliarity with the particular job requirements. Additionally, Kuylen testified that his statistics did not differentiate which of the jobs that he projected were available were long distance runs, which plaintiff testified he could not make without substantial pain.
Moreover, were we to assume that defendant carried its burden of proving that there were trucking jobs available in the community which would net plaintiff higher weekly wages than his self-employment,[5] we believe that plaintiff carried his burden of showing by clear and convincing evidence that pain prevented him from performing the jobs proven available. See LSA-R.S. 23:1221(3)(c)(ii).
Plaintiff has assigned as error the trial court's determination that $612.88 was plaintiff's average weekly wage prior to his disability. There was some discussion between counsel at the close of the trial regarding wage records for the 26 weeks preceding plaintiff's disability. The court instructed the parties to jointly submit the figures, but plaintiff's counsel requested that, instead, defendant be given a week within which to submit its figures and that plaintiff be afforded a week thereafter to *530 "file whatever we want." The court agreed. Within five days of the trial defendant submitted figures which were incomplete, including only the preceding fourteen weeks. The trial court calculated the average weekly wage from these weeks. The formula in LSA-R.S. 23:1221(3)(a) provides for an award of supplemental benefits equal to 74% of the difference between 90% of the average monthly wages at the time of the injury and the average monthly wages the employee is able to earn afterwards, and provides that the average monthly wage is to be computed as 4.3 times the wages defined in LSA-R.S. 23:1021(10), the pertinent provision[6] of which reads:
If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by four.
The wage figures for the 26-week period immediately preceding the accident were not available to the trial court because defendant did not produce the complete records, as agreed. However, there is no evidence in the record that would suggest plaintiff made use of the week granted him to produce figures of his own or take whatever action he contemplated when requesting the additional week.
The ultimate burden of proving the amount of benefits due was on plaintiff. The trial court awarded only the amount that he found was shown. We find no clear error in the award.
For the reasons expressed hereinabove, the trial court's judgment is affirmed at defendant's cost.
AFFIRMED.
NOTES
[1] Incorrectly referred to in plaintiff's petition as "The Mason Dixon Tank Lines, Inc."
[2] The injury occurred on April 3, 1984. The provisions applicable at that time (LSA-R.S. 23:1221(3) (1983)) differ from the current version only in the mathematical formula for calculation of the benefits. All future reference to the statute will be as it existed prior to 1985 unless otherwise indicated.
[3] The formula differs somewhat in the current statute. In both, however, the computation of the average wage is to be 4.3 times the wages defined in LSA-R.S. 23:1021(10).
[4] Plaintiff testified that he was dismissed approximately a month after the accident.
[5] We specify trucking jobs because Kuylen testified that truck driving would be the most lucrative employment available to plaintiff. We note additionally that Kuylen could not specify how many persons in the community would be competing for these jobs and did not testify as to the average weekly wage that could be expected.
[6] Plaintiff was paid on the basis of hours worked and miles driven; therefore, his wages would be computed pursuant to the formula provided in LSA-R.S. 23:1021(10)(d).